1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JUSTICE LAMAR ALLEYNE,

11              Petitioner,                 No. CIV S-09-1903 MCE DAD P

12          vs.

13   M.S. EVANS,

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  The petition before the court challenges petitioner's 2006

18   judgment of conviction entered in the Sacramento County Superior Court on one count of

19   transporting cocaine base for sale between non-contiguous counties in violation of California

20   Health and Safety Code § 11352(b), one count of possession of cocaine base for sale in violation

21   of California Health and Safety Code § 11351.5, and one count of transporting cocaine base in

22   violation of California Health and Safety Code § 11352(a).

23              Petitioner seeks federal habeas relief on the grounds that: 1) the trial court

24   improperly admitted certain evidence at trial; 2) a juror committed misconduct; 3) there was

25   insufficient evidence introduced at trial to support his conviction; 4) the trial court erred in

26   imposing sentence; and 5) there was cumulative error.

1

1    Upon careful consideration of the record and the applicable law, the undersigned

2    will recommend that petitioner's application for habeas corpus relief be denied.

3                          PROCEDURAL BACKGROUND

4    On May 30, 2006, a Sacramento County Superior Court jury found petitioner and

5    his co-defendant guilty of transporting cocaine base, transporting cocaine base for sale between

6    non-contiguous counties, and possessing cocaine base for sale.  (Notice of Lodging Documents

7    on November 30, 2009 (Doc. No. 13), Clerk's Transcript on Appeal ("CT") at 385-86.)

8    Following his conviction, petitioner was sentenced on July 21, 2006, to a state prison term of

9    nineteen years.  (Id. at 483.)

10   Petitioner appealed his judgment of conviction to the California Court of Appeal

11   for the Third Appellate District.  On April 15, 2008, the judgment of conviction was affirmed.[1]

12   (Resp't's Lod. Doc. No. 3.)  Petitioner then filed a petition for review with the California

13   Supreme Court.  (Resp't's Lod. Doc. 5.)  On July 23, 2008, the California Supreme Court denied

14   that petition.  (Resp't's Lod. Doc. 6.)

15   On July 13, 2009, petitioner filed the federal habeas petition now before this

16   court.  (Docket No. 1-"Pet.".)  Respondent filed an answer on November 30, 2009.  (Docket. No.

17   12-"Answer.")  Petitioner has not filed a traverse.

18                            FACTUAL BACKGROUND

19   In its unpublished memorandum and opinion affirming petitioner's judgment of

20   conviction, the California Court of Appeal for the Third Appellate District provided the

21   following factual summary:

22       On October 30, 2005, Sacramento City Police officers surrounded
         the Greyhound bus from Reno when it arrived that morning.  After
23       the passengers disembarked, the officers found a black Echo jacket

24   _____

25       [1] The California Court of Appeal did, however, strike petitioner's conviction for
     transporting cocaine base for sale, finding that offense to be a lesser included offense of
26   transporting cocaine base for sale between non-contiguous counties.  (Resp't's Lod. Doc. 3 at 16-
     17.)

                                             2

with a fur collar on the overhead luggage rack near the rear of the bus.  None of the passengers claimed the jacket.  In the jacket, in plastic wrap, were lumps of rock cocaine, with a street value of approximately $40,000.

Defendant Thomas was among the first 10 passengers off the bus.  He was wearing a sweat suit and had no jacket.  He falsely identified himself as Trevoris White.  He was detained.

Defendant Alleyne did not get off the bus with the other passengers.  After getting up from a seat near the rear of the bus and initially moving toward the front of the bus, he returned and went to the rear restroom.  He came out only after officers threatened to set loose a police dog if he did not.  He declined to give his name.  He was wearing a dark blue ski coat with a fur collar.  He had $1,858 in cash in his pants pocket.  He had a cell phone charger cord in another pocket.  During the booking process with defendant Alleyne, he asked officers how they had known "we" were on the bus.

When the other passengers claimed their checked luggage and left, six pieces remained.  Three of the bags were checked to a passenger identified as Chris White.  The other three were checked to a passenger identified as Kevin Thomas.  Greyhound records showed no mention of either defendant as a passenger, however, a Chris White had purchased passage for himself and a Kevin Thomas from Minnesota to Sacramento.  One of the bags contained two distinct sizes of shoes and clothing.  The two sizes were consistent with the defendants insofar as one is larger than the other.  Also found in the bags, inter alia, were pictures of defendant Alleyne, a credit card in his name, a digital scale for gram weighing, an empty box for a prepaid cell phone, and two boxes of plastic baggies, one of which bore defendant Alleyne's fingerprint.

Rufus Cooks, the Greyhound bus driver, testified as follows.  He noticed defendants in Reno when they came out together to the bus before it was cleared for boarding.  They were supposed to remain in the terminal so he directed them to go back inside.  They were wearing jackets with big furry collars.  He had thought one of the jackets was white or light colored, but had principally focused on the fur collars, one dark, one light.  None of the other passengers had fur collars as far as he could recall.  However, he was not positive that no one else might have had a puffy jacket with a fur collar.

The lighter complexioned of the two men Cooks saw together in Reno wore the lighter colored coat and asked Cooks a question during a brief stop in Colfax (to fix an air pressure problem with the brakes).  Defendant Thomas has a darker complexion than defendant Alleyne.  At trial, Cooks could only say the defendants looked similar to the pair.  However, he was "100 percent positive"

that the two men who were detained on arrival in Sacramento were the pair he had first noticed in Reno. He could not be certain that the jackets at trial were those worn by the men, but the two collars were the same colors (one dark, one light) that he had seen in Reno.

Kevin Forson, a Greyhound terminal security guard, was looking into the bus on arrival when it was surrounded by the police. He saw defendant Thomas standing near the rear of the bus. Defendant Thomas took off his jacket and put it down on the seat or floor. When Forson next saw defendant Thomas, he was being handcuffed by police officers.

Both defendants were Chico residents. Each had "MOB" tattooed on his right upper arm.

Defendant Alleyne testified, in pertinent part, as follows. He denied involvement with the cocaine. The money had been earned through lawful employment. He admitted owning three of the bags. He said he had been traveling with another man from Minnesota to Sacramento, not defendant Thomas. The other man bought the tickets and the phone and checked the luggage. He knew nothing about the scale in the other man's luggage. The baggies were to store food purchased along the way for use on the bus. He had waited in the bus restroom on arrival because he was on parole and was aware he was unlawfully traveling outside the permitted distance from his home.

(Resp't's Lod. Doc. 3 ("Opinion") at 2-5.)[2]

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas

_____

[2] The factual background set forth above reflects modifications ordered by the California Court of Appeal in a May 9, 2008 order modifying the original opinion and denying rehearing. (Resp't's Lod. Doc. 4.)

1    corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

2    (1972).

3            This action is governed by the Antiterrorism and Effective Death Penalty Act of

4    1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

5    1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. § 2254(d) sets forth the following standards for

6    granting habeas corpus relief:

7                An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall
8            not be granted with respect to any claim that was adjudicated on
             the merits in State court proceedings unless the adjudication of the
9            claim -

10               (1) resulted in a decision that was contrary to, or involved
             an unreasonable application of, clearly established Federal law, as
11           determined by the Supreme Court of the United States; or

12               (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
13           State court proceeding.

14   See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

15   (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

16   does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

17   of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

18   also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

19   we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

20   error, we must decide the habeas petition by considering de novo the constitutional issues

21   raised.").

22           The court looks to the last reasoned state court decision as the basis for the state

23   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

24   state court decision adopts or substantially incorporates the reasoning from a previous state court

25   decision, this court may consider both decisions to ascertain the reasoning of the last decision.

26   Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

1  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

2  habeas court independently reviews the record to determine whether habeas corpus relief is

3  available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v.

4  Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached

5  the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

6  deferential standard does not apply and a federal habeas court must review the claim de novo.

7  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

8  II.  Petitioner's Claims

9        A.  Improperly Admitted Evidence

10            Petitioner claims that the trial court's admission of testimony that he and his co-

11  defendant both had the word "MOB" tattooed on their upper-right arm was improper and

12  rendered his trial fundamentally unfair.  (Pet. at 9-14.)[3]  Petitioner argues that an "MOB" tattoo is

13  a "cultural/generational" fad, found commonly on "persons depicted in various magazines . . .

14  targeting a [primarily] black audience."  (Id. at 11.)  He asserts that the "similar tattoo evidence"

15  was not relevant and that its admission was highly inflammatory and prejudicial because the

16  word "mob" is associated with those who are "criminals, ruthless, violent, and gangster[s]."  (Id.

17  at 12-13.)  Respondent argues that review of petitioner's claim is procedurally barred and that his

18  claim in this regard is ultimately meritless.

19            A petitioner may not raise a federal constitutional claim in a federal habeas action

20  that he could not raise in state court due to procedural default.  Engle v. Isaac, 456 U.S. 107

21  (1982); Wainwright v. Sykes, 433 U.S. 72 (1977).  As a general rule, a federal habeas court

22  "'will not review a question of federal law decided by a state court if the decision of that court

23  rests on a state law ground that is independent of the federal question and adequate to support the

24  judgment.'"  Calderon v. United States District Court (Bean ), 96 F.3d 1126, 1129 (9th Cir.

25

26        [3] Page number citations such as this one are to the page number reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

6

1  1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  However, a reviewing court

2  need not invariably resolve that question prior to ruling on the merits of a claim where the issue

3  of procedural default turns on difficult questions of state law.  Lambrix v. Singletary, 520 U.S.

4  518, 524-25 (1997).  Under the circumstances presented here, this court finds that petitioner's

5  claim challenging the admission of testimony regarding the matching "mob" tattoos can be

6  resolved more easily by addressing it on the merits.  Accordingly, the court will assume that

7  petitioner's claim is not procedurally defaulted.

8     The California Court of Appeal specifically rejected petitioner's argument that the

9  trial court erred in admitting the evidence of the similar tattoos displayed by petitioner and his

10  co-defendant.  In doing so, that court reasoned as follows:

11
> Defendants contend the trial court erred in ruling evidence that they both bore a similar tattoo on their right arms was admissible.
12
> They argue that the evidence was irrelevant and more prejudicial than probative.  The arguments are unpersuasive and the contention
13
> of error has no merit.

14
> The sole defense objection tendered in the trial court was that the tattoo evidence was irrelevant.  However, that two people make the
15
> same unusual "fashion choice" is relevant[FN] to the issue of whether they are connected socially.  As the saying goes, "Birds of a feather
16
> flock together."  Each such cumulative point of similarity has a tendency in reason to prove such connection.

17
18
>   FN. "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in
19
>   reason to prove or disprove any disputed fact that is of consequence to the determination of the action."
20
>   (Evid. Code, § 210.)

21
> There was discussion outside the presence of the jury about undue prejudice of the evidence if additional evidence were adduced that
22
> defendants' "MOB" tattoos were gang related.  The court said it would exclude any such gang connection information.[FN]  On
23
> appeal, defendants argue for the first time that the evidence was more prejudicial than probative because: "No rational juror could
24
> have failed to understand that the tattoo evidence was meant to be probative of gang membership . . . ."  As this argument was not
25
> made in the trial court, it is precluded on appeal.  (See Evid. Code, § 353.)

26  /////

FN. The trial court also said it found the evidence more probative than unduly prejudicial. However, in context, this statement was not addressed to prejudice from gang-related associations. It seems to have been addressed toward an implicit claim that the jury would simply overrate the probative value of the evidence.

(Opinion at 14-15.)

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). Accordingly, a federal court cannot disturb a state court's decision to admit evidence on due process grounds unless the admission of the evidence was "arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). See also Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986). The Supreme Court has admonished that the category of infractions that violate "fundamental fairness" has been defined very narrowly. Estelle, 502 U.S. at 72. See also Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (Noting that the "Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.") Thus, a habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended by 421 F.3d 1154 (9th Cir. 2005).

In addition, in order to obtain habeas relief on the basis of evidentiary error, a habeas petitioner must show that the error was one of constitutional dimension and that it was not harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993). Thus, in order to grant relief, the habeas court must find that the error had "'a substantial and injurious effect' on the verdict." Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at 623).

Here, petitioner was not denied a fundamentally fair trial by the admission of evidence that he and his co-defendant each had similar "MOB" tattoos. The tattoo evidence was

8

1 admitted after petitioner testified on direct examination that he had not been traveling to and

2 from Minneapolis with his co-defendant and that he first saw his co-defendant when the bus

3 stopped in Reno.  (Reporter's Transcript on Appeal ("RT")  at 506-16.)  Based on that testimony

4 the trial judge reasoned that, while it was the assertion of the defense that it was "pure

5 happenstance that these two guys" were on the same bus, the tattoo evidence was "relevant to the

6 People's theory of the case" that the two defendants were in fact aiding and abetting each other.

7 (Id. at 534.)  The trial judge found that the tattoo evidence was "substantially more probative than

8 it [was] prejudicial, and . . . it [was] strong circumstantial evidence of a connection" between

9 petitioner and his co-defendant.  (Id.)  The trial judge did however did take care to exclude any

10 reference to the meaning of the tattoo or any possible indication of gang membership on the part

11 of the defendants.  (Id. at 533-35.)

12         The state trial court's ruling allowing the introduction of the tattoo evidence was not

13 arbitrary, since the evidence was clearly relevant to demonstrating the existence of a relationship

14 between petitioner and his co-defendant despite petitioner's testimony to the contrary.  Nor was

15 its admission so prejudicial that it rendered petitioner's trial fundamentally unfair, in that the trial

16 judge carefully limited the scope of the evidence to only that establishing a relationship between

17 the two defendants.  Thus, the rejection of petitioner's argument in this regard by the California

18 Court of Appeal was neither contrary to, nor an unreasonable application of clearly established

19 federal law.  Accordingly, petitioner is not entitled to federal habeas relief on his claim of

20 evidentiary error.

21    B.  Juror Misconduct

22         Petitioner claims that a juror at his trial committed misconduct by using the law of

23 probability to find him guilty instead of applying the applicable proof beyond a reasonable doubt

24 standard.  (Pet. at 14.)  In his motion for a new trial, counsel for petitioner's co-defendant

25 declared that the jury foreperson informed him after the trial that:

26 /////

9

> ... while at home over the long weekend, he had made a list of the circumstantial evidence in the case that could be interpreted as linking Mr. Thomas to [petitioner], and then he applied "the law of probability" to the list. He determined that although when considered alone, each one of the listed circumstances could be explained away, there were just too many all together, and considering them all at once led him to believe that the defendants must have known each other and were traveling together, with the drugs, as alleged by the prosecution.

(CT at 403.)

Petitioner argues that the "introduction of the law of probability into deliberation . . . represented . . . outside information and/or influence that denied petitioner a right to a fair trial." (Pet. at 16.)  Moreover, petitioner contends that the use of the "law of probability" standard "allowed the jury to convict petitioner" by less than proof beyond a reasonable doubt.  (Id. at 17.)

The California Court of Appeal specifically rejected petitioner's argument that his conviction was tainted by juror misconduct.  Specifically, that court stated as follows:

> Jurors, of necessity, bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience, including their education and professional work.  (See In re Lucas (2004) 33 Cal.4th 682, 696.)  Every assessment by a trier of fact of the weight of the evidence involves the conscious or implicit application of "laws" of probability.  A juror's use of notions, assessments, or laws of probability does not amount to misconduct (cf. People v. Marshall (1990) 50 Cal.3d 907, 950) nor, per se, does it show reliance upon erroneous legal theory.  (Compare People v. Venegas (1998) 18 Cal.4th 47, 82-83 with People v. Collins (1968) 68 Cal.2d 319, 332.)
>
> "In the Evidence Code the Legislature has determined that certain facts may be proved to impeach a verdict.  'Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly.  No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.'  (Evid. Code, § 1150, subd. (a).)  This distinction between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved, has been advocated by commentators [citations] . . . . [¶] . . . This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent.  The only improper influences that may be proved under section

1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration." (People v. Hutchinson (1969) 71 Cal.2d 342, 349-350.)

The declaration in support of a new trial, in pertinent part, is as follows: "Juror [No.] 9, the Foreperson[,] then stated to me that he had taken some time at home on Saturday and listed all of the circumstantial evidence, making a list similar to the one [the prosecutor] had presented in his closing argument, and that he then 'applied the law of probability' to the list. Juror [No.] 9 said that, although there might have been an explanation for any one item on the list by itself, when he 'applied the law of probability' and considered all of the items together, he decided that [defendants] must be guilty."

The claimed misconduct presented in the declaration supporting the motion for a new trial addresses a juror's thought processes in reaching the verdict.[FN] However, as related above, the subjective reasoning processes of a juror are not open to proof. Since the declaration in support addressed only such matters, the trial court did not err in denying the motion for a new trial.

> FN. Defendants mention two statements by trial counsel in the course of the hearing. First, the prosecutor, in a rambling account of his recollection of the juror's remarks, indicated that the juror discussed the list of circumstantial evidence with other jurors. The account is ambiguous as to whether the juror said he stated any theory about a law of probability to other jurors and provides no information on the content of such a statement, if any. Second, one defense counsel asserted the juror said "there were . . . like mathematical equations that he used in his profession as an engineer that he utilized in this law of probability to make actual calculations with."
>
> None of these remarks in argument were adduced at the hearing as evidence. There was no request to adduce them as evidence. We note that the court expressly ruled on the sufficiency of the declaration submitted in support of the motion for new trial.
>
> In any event, we cannot draw inferences against the judgment based on equivocal remarks. (See, e.g., 9 Witkin, Cal. Procedure (4th ed.1997) § 349, pp. 394-396.) The prosecutor's remarks are not an assertion that Juror No. 9 argued to other jurors that they also should apply a law of probability to decide the case. (Even if that were so, the conduct could well be immaterial, e.g., if the "law" were a valid one, properly applied.) Defense counsel's remarks pertain solely to the mental processes of Juror No. 9 and, for reasons given in the text, are inadmissible. Moreover,

/////

11

1    those remarks fail to reveal that the use made by Juror No. 9 of the laws of
2    probability was, in effect, erroneous.

3    (Opinion at 10-13.)

4         The Due Process Clause guarantees that a criminal defendant may be convicted only

5    "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which

6    he is charged." In re Winship, 397 U.S. 358, 364 (1970). The defendant is also entitled to a jury

7    that reaches a verdict on the basis of evidence produced at trial. Turner v. Louisiana, 379 U.S.

8    466 (1965); Estrada v. Scribner, 512 F.3d 1227, 1238 (9th Cir. 2008); Bayramoglu v. Estelle, 806

9    F.2d 880, 887 (9th Cir. 1986) ("Jurors have a duty to consider only the evidence which is

10   presented to them in open court."). The introduction of prejudicial extraneous influences into the

11   jury room constitutes misconduct which may result in the reversal of a conviction. Parker v.

12   Gladden, 385 U.S. 363, 364-65 (1966). However, it is not improper for a juror to bring his or her

13   outside experiences to bear during deliberations. See Grotemeyer v. Hickman, 393 F.3d 871, 878

14   (9th Cir. 2004) (not improper for jury foreperson, a physician, to express her opinion that the

15   defendant's mental illness caused him to commit the crime and that he would receive adequate

16   mental health care in prison); United States v. Navarro-Garcia, 926 F.2d 818, 821-22 (9th Cir.

17   1991) (not improper for a juror to rely on his/her past personal experiences when deliberating on

18   a verdict as long as personal experiences are relevant only for purposes of interpreting the record

19   evidence); see also Fields v. Brown, 503 F.3d 755, 797 (9th Cir. 2007) ("After we choose jurors,

20   we want the decision made on the basis of what went on in the courtroom, filtered through the

21   personalities, background information, and reasoning ability the jurors brought with them to

22   court.")

23        As the Ninth Circuit has explained:

24   On collateral review, trial errors-such as extraneous information that was
     considered by the jury - are generally subject to a 'harmless error' analysis,
25   namely, whether the error had 'substantial and injurious' effect or
     influence in determining the jury's verdict. Jeffries v. Wood, 114 F.3d
26   1484, 1491 (9th Cir. 1997)) (citing Brecht v. Abrahamson, 507 U.S. 619,

638 (1993)); see also Sassounian v. Roe, 230 F.3d 1097, 1108 (9th Cir. 2000).

Estrada, 512 F.3d at 1235.  See also Fields v. Brown, 431 F.3d 1186, 1209 n.16 (9th Cir. 2005) (noting that Brecht provides the standard of review for harmless error in cases involving juror misconduct); Thompson v. Borg, 74 F.3d 1571, 1574-76 (9th Cir. 1996) (applying Brecht harmless-error standard when a venire member stated during voir dire that he had read in a newspaper that the defendant had "pleaded guilty at one time and changed it"). Cf. Caliendo v. Warden of California Men's Colony, 365 F.3d 691, 695-98 (9th Cir. 2004) (recognizing that United States Supreme Court jurisprudence requires courts to presume prejudice in cases involving unauthorized contact between a juror and a witness, an interested party, or the officer in charge).[4]  The following factors have been identified as relevant to determining whether the alleged introduction of extrinsic evidence into jury deliberations constitutes reversible error: (1) whether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters which may bear on the issue of whether the introduction of extrinsic material substantially and injuriously affected the verdict.  Estrada, 512 F.3d at 1238.  See also Sassounian v. Roe, 230 F.3d 1097, 1109 (9th Cir. 2000).

Here, there is no evidence that any extraneous information was received by petitioner's jury.  Rather, the juror conduct petitioner complains of amounted to nothing more than, as the state trial court found, the "mental process of a juror." (RT at 776.)  The evidence presented at petitioner's trial included a considerable circumstantial evidence including, but not

---

[4] It is true that "[t]he presence of a biased juror is a structural error, not subject to the harmless error analysis, and if one is found the defendant is entitled to a new trial."  Estrada, 512 F.3d at 1235 (citing Dyer v. Calderon, 151 F.3d 970, 973 n. 2 (9th Cir.1998) (en banc)). However, there is no evidence here suggesting that any of the jurors seated in petitioner's case were biased.  Accordingly, harmless error review is appropriate.

1  limited to, the fact that petitioner was traveling on a bus under a false name along with his co-

2  defendant, that he attempted to hide from police in the restroom of the bus, that he refused to

3  give his name to police officers, that a jacket with a fury collar containing cocaine was found on

4  the bus, that the bus driver recalled that petitioner and his co-defendant were both wearing

5  jackets with fury collars similar to the collar on the jacket found on the bus containing the

6  cocaine, petitioner claimed that he was not traveling with his co-defendant though they both bore

7  similar tattoos and resided in the same city, and petitioner's credit card and picture were found in

8  a group of unclaimed luggage bags that also contained a digital scale, an empty box for a prepaid

9  cell phone and two boxes of plastic baggies, one of which bore petitioner's fingerprint.

10         Even assuming arguendo that petitioner's assertion regarding the conduct of this

11  particular juror is true, the record merely reflect that the juror evaluated the likelihood of all these

12  individual circumstances occurring together by chance in light of his own life experience.  The

13  juror in question simply brought his prior experience, gathered before he was selected as a juror,

14  to bear in considering the evidence presented at trial.   As noted above, it is not at all improper

15  for the juror to do so.  Grotemeyer, 393 F.3d at 878-79; Navarro-Garcia, 926 F.2d at 821-22l; see

16  also Fields, 503 F.3d at 797.

17         Moreover, the jury at petitioner's trial was instructed, in part, as follows:

18    A defendant in a criminal case is presumed to be innocent.  This
      presumption requires that the People prove each element of a crime
19    beyond a reasonable doubt.  Whenever I tell you the People must prove
      something, I mean they must prove it beyond a reasonable doubt.
20
      Proof beyond a reasonable doubt is proof that leaves you with an abiding
21    conviction that the charge is true.  The evidence need not eliminate all
      possible doubt because everything in life is open to some possible or
22    imaginary doubt.

23    In deciding whether the People have proved their case beyond a reasonable
      doubt, you must impartially compare and consider all the evidence that
24    was received throughout the entire trial.  Unless the evidence proves a
      defendant guilty beyond a reasonable doubt, he in entitled to an acquittal
25    and you must find him not guilty.

26                                    * * *

Facts may be proved by direct or circumstantial evidence or by a combination of both.

* * *

Both direct and circumstantial evidence are acceptable types of evidence to prove or disprove the elements of a charge, including intent and mental state and acts necessary to a conviction, and neither is necessarily more reliable than the other. Neither is entitled to any greater weight than the other. You must decide whether a fact in issue has been proved based on all the evidence.

Before you rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

Also before you rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty.

(CT at 324-27.)

Thus, petitioner's jury (including the juror whose conduct is challenged by petitioner here) was instructed that while they could rely on circumstantial evidence in finding petitioner guilty, they could only do so after concluding that the prosecution had proven each fact essential to that conclusion beyond a reasonable doubt and that the only reasonable conclusion supported by the circumstantial evidence was that petitioner was guilty. Jurors, of course, are presumed to have obeyed the trial court's instructions. Kansas v. Marsh, 548 U.S. 163, 179 (2006); Zafiro v. United States, 506 U.S. 534, 540 (1993); Taylor v. Sisto, 606 F.3d 622, 626 (9th Cir. 2010).

Thus, the rejection of petitioner's argument in this regard by the California Court of Appeal was neither contrary to, nor an unreasonable application of clearly established federal law. Accordingly, petitioner is not entitled to federal habeas relief on his claim of juror misconduct.

C. Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence introduced at his trial to support his conviction for transporting cocaine base for sale between non-contiguous counties and possession of cocaine base for sale. Specifically, petitioner asserts that it was "never

15

1   demonstrated by anything more than suspicion or conjecture" that he possessed the cocaine found

2   in the jacket and that the prosecution failed to prove beyond a reasonable doubt the he had

3   knowledge of the presence of the cocaine in the jacket.  (Pet. at 22.)

4          The California Court of Appeal specifically rejected this insufficiency of the evidence

5   by petitioner, reasoning as follows:

6          Defendants contend that there is insufficient evidence to support the
       judgments.  They argue: (1) without the evidence of Cooks, the driver, and
7       Forson, the security guard, the evidence does not suffice[FN] and (2) the
       testimony of both witnesses is of little weight and is inherently improbable
8       and must be entirely rejected.  The arguments are unpersuasive and the
       contention of error is without merit.

9
              FN. We need not decide if the other evidence alone would
10             suffice, as we find defendants' claims about the testimony
              of Cooks and Forson unpersuasive.
11
          We summarize the other evidence briefly: Someone on the
12       bus discarded a jacket with bulk cocaine in it.  Two
       African-American men on the bus traveled from Minnesota
13       together under false names.  One was notably darker in
       complexion than the other.  Their possessions were
14       commingled in luggage no one else claimed.  The luggage
       contained baggies and a scale suitable for weighing bulk
15       cocaine to sell.  One of the men was [petitioner].  He hid in
       the restroom when he saw the police and had to be
16       threatened to come out.  He had a large amount of cash in
       his pocket and a cell phone charger, but no cell phone
17       turned up.  After he and defendant Thomas were arrested,
       he asked the police how they knew "we" were on the bus.
18       [Petitioner] testified, allowing the jury to infer from
       demeanor that he was lying about his role and connection to
19       defendant Thomas.

20          Defendant Thomas disembarked on a cold morning, having
       traveled from points east of Reno in very late October, with
21       no coat or jacket.  He gave a false name to the police.  The
       last name he used is the same as the man who traveled with
22       [petitioner].  Defendant Thomas carried no luggage and no
       unaccounted for luggage but that of the man who traveled
23       with [petitioner].  He is African-American and darker in
       complexion than [petitioner].  Both defendants are Chico
24       residents and they sport similar, unusual tattoos.

25          Defendants make two kinds of attacks on the testimony of each witness.
       They first argue (1) that the testimony actually does not add significant
26       weight to the other evidence and (2) if it did, the entire testimony of the

1   witness should be rejected as without credibility.  As is frequently the case
    (see, e.g., <u>Overton v. Vita-Food Corp.</u> (1949) 94 Cal.App.2d 367, 370,
2   disapproved on different grounds in <u>Parsons v. Bristol Development Co.</u>
    (1965) 62 Cal.2d 861, 866, fn. 2), these arguments are unpersuasive.
3   Defendants fail to assess the evidence in the requisite light, i.e., that most
    favorable to the prosecution.  (<u>People v. Davis</u> (1995) 10 Cal.4th 463,
4   509.)

5   (Opinion at 5-6.)

6       The Due Process Clause of the Fourteenth Amendment "protects the accused against

7   conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

8   crime with which he is charged."  <u>In re Winship</u>, 397 U.S. at 364.  There is sufficient evidence to

9   support a conviction if, "after viewing the evidence in the light most favorable to the prosecution,

10  any rational trier of fact could have found the essential elements of the crime beyond a

11  reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  "[T]he dispositive question

12  under <u>Jackson</u> is 'whether the record evidence could reasonably support a finding of guilt beyond

13  a reasonable doubt.'"  <u>Chein v. Shumsky</u>, 373 F.3d 978, 982 (9th Cir. 2004) (quoting <u>Jackson</u>,

14  443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when

15  challenging the sufficiency of the evidence used to obtain a state conviction on federal due

16  process grounds."  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant the

17  writ, the federal habeas court must find that the decision of the state court reflected an objectively

18  unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case.  <u>Id.</u> at 1275 & n. 13.

19      After reviewing the record, the undersigned concludes that there was sufficient

20  evidence introduced at petitioner's trial to support his conviction on charges of possessing

21  cocaine base for sale and transporting it between non-contiguous counties.  At trial Kevin

22  Forson, the bus station's security guard, testified that he saw petitioner's co-defendant remove

23  his jacket prior to exiting the bus.  (RT at 254-56.)  The only jacket located on the bus had 391

24  grams of rock cocaine inside the right pocket.  (<u>Id.</u> at 123-25, 441.)  Rufus Cook, the bus driver,

25  testified that he had seen petitioner and his co-defendant in Reno and that both were wearing

26  similar jackets with "big furry collars."  (<u>Id.</u> at 164-66.)  Forson also testified that petitioner was

17

1   wearing a jacket similar to that of his co-defendant when petitioner was taken off the bus.  (Id. at

2   258.)

3          Petitioner did testify that he had not been traveling with his co-defendant on the way

4   back from Minneapolis and only recognized him as a fellow resident of Chico when the bus

5   stopped in Reno.  (Id. at 584-85.)  However, the jury heard testimony that bot petitioner and his

6   co-defendant have "MOB" tattooed on their right upper arms, although the tattoos are not

7   identical.  (Id. at 587.)

8          The jury also received evidence establishing the following.  Petitioner was found by

9   police officers hiding in the bathroom of the bus after all of the other passengers had exited and

10   was carrying $1,858 in cash.  (Id. at 49, 51, 54.)  After petitioner and his co-defendant were

11   arrested, six items of unclaimed luggage were seized by police.  (Id. at 126.)  Three items of that

12   seized luggage had tags identifying them as belonging to a Kevin Thomas, while the other three

13   had tags identifying them as belonging to a Chris White.  (Id. at 127.)  When initially questioned

14   by police officers petitioner's co-defendant identified himself as Trevoris White.  (Id. at 115.)

15          Christopher Brooks, an operations managers for Greyhound Bus lines, testified that he

16   was unable to locate petitioner's name or his co-defendant's name in Greyhound's passenger

17   records.  (Id. at 406.)  According to Greyhound's passenger records, however, someone claiming

18   to be Chris White purchased two tickets and generated six luggage tags, three under the name

19   Chris White and three under the name Kevin Thomas.  (Id. at 406-19.)  Petitioner, in fact,

20   testified that three of those six items of luggage belonged to him.  (Id. at 511.)  Found inside the

21   luggage petitioner claimed was his were two boxes of sandwich bags, one of which bore

22   petitioner's fingerprint, and an empty box for a prepaid cell phone.  (Id. at 331, 342, 400.)  Found

23   inside one of the pieces of luggage that petitioner did not claim was a digital scale.  (Id. 339.)

24          Petitioner argues that the evidence introduced at trial against him was purely

25   circumstantial and that there were innocent explanations for his possession of the sandwich

26   baggies, his traveling under a false name, the digital scale found in the other set of unclaimed

18

1   luggage, etc.  However, in reviewing the sufficiency of the evidence supporting a conviction, the

2   relevant inquiry for this court is not whether the evidence excludes every hypothesis except guilt,

3   but whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455,

4   458 (9th Cir. 1991).  Here, the jury could have reasonably arrived at its guilty verdict based on

5   the evidence presented.  Of course, circumstantial evidence alone is sufficient to support a

6   conviction.  See Jackson, 443 U.S. at 324-25 ("From the circumstantial evidence in the record, it

7   is clear that the trial judge could reasonably have found beyond a reasonable doubt that the

8   petitioner did possess the necessary intent at or before the time of the killing."); Schad v. Ryan,

9   606 F.3d 1022, 1038 (9th Cir. 2010) ("Circumstantial evidence and reasonable inferences drawn

10  from it may properly form the basis of a conviction.").

11          Petitioner also argues that the prosecution failed to introduce sufficient evidence

12  establishing that he knew of the presence of the cocaine or that he had constructive possession of

13  it.  A federal habeas court determines the sufficiency of the evidence in reference to the

14  substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324

15  n.16; Chein, 373 F.3d at 983.  Under California law the crime of possession of narcotics requires

16  a physical or constructive possession of the narcotic substance plus an awareness of its presence

17  and nature.  People v. Hokuf, 245 Cal. App.2d 394, 397 (1966).  These essential elements may be

18  established by circumstantial evidence and reasonable inferences which may be drawn from such

19  evidence.  People v. Williams, 5 Cal. 3d 211, 215 (1971); People v. Busch, 187 Cal. App.4th

20  150, 162 (2010); People v. Valenzuela, 174 Cal. App.2d 759, 762 (1959).

21          Here the jury found that the jacket containing the cocaine belonged to petitioner's co-

22  defendant and that based on the evidence presented, including the circumstantial evidence and

23  evidence of their conduct, that the defendants were jointly engaged in possessing and

24  transporting the cocaine.  That conclusion is permissible drawn under  California law.  See

25  People v. Tripp, 151 Cal. App.4th 951, 956 (2007) (knowledge of possession of narcotic

26  substance can be shown by evidence of defendant's suspicious and furtive acts); People v.

19

1   Howard, 33 Cal. App.4th 1407, 1419 (1995) (right to control a thing through another person can

2   constitute constructive possession); People v. Cirilli, 265 Cal. App.2d 607, 612 (1968) ("Such

3   joint possession does not require that the narcotic be on the person of any of the joint possessors.

4   Thus it may have been found in a vehicle in which the joint possessors have been riding, and

5   need not have been in that part of the vehicle in which one of them is seated.  Possession of a

6   narcotic, including knowledge of its narcotic character, may be established by circumstantial

7   evidence.") (citations omitted); People v. Rodriguez, 181 Cal. App.2d 34, 37 (1960) ("Two or

8   more persons may be so closely associated in the handling of a narcotic that their possession of it

9   may be joint."); People v. Toms, 163 Cal. App.2d 123, 128 (1958) ("Exclusive possession need

10   not be shown where several persons are charged with possession of the same contraband and the

11   question of whether the appellants had joint control of the narcotics involved was properly left

12   for the determination of the jury."); People v. Basco, 121 Cal. App.2d 794, 796 (1953) ("A

13   person may be so closely interested in and connected with the unlawful possession of narcotics

14   by another as to furnish support for a finding that there was a joint possession.")

15          Here, viewing the evidence in the light most favorable to the prosecution, the

16   evidence of record reasonably supported the jury's beyond a reasonable doubt finding that

17   petitioner transported cocaine base for sale between non-contiguous counties and possessed

18   cocaine base for sale.  See Jackson, 443 U.S. at 319.  Thus, the rejection of petitioner's

19   arguments in this regard by the California Court of Appeal was neither contrary to, nor an

20   unreasonable application of clearly established federal law.  Accordingly, petitioner is not

21   entitled to federal habeas relief on his insufficiency of the evidence claim.

22      D.  Sentencing

23          Petitioner asserts that he was improperly sentenced to the upper term of nine years

24   with respect to his conviction for transporting cocaine base for sale between non-contiguous

25   counties.  (Pet. at 29.)  He contends that the sentence was imposed based on facts not found to be

26   true by the jury as required.  (Id.)

In sentencing petitioner to the applicable upper term on his conviction for transporting cocaine, the court stated:

> With respect to count one, it is the judgment and sentence of this Court that Defendant be committed to the State Prison for the upper term of nine years.  This court imposes the upper term because of the numerous sustained juvenile petitions and the fact that Defendant was on active parole and was, in fact, a parolee at large when this offense was committed.

(RT at 799.)

On appeal, the California Court of Appeal specifically rejected petitioner's argument that the trial court erred in imposing an upper term sentence.  The state appellate court reasoned as follows:

> Defendants contend that the trial court erred in imposing upper term sentences.  They argue the sentences were imposed based upon factors that were not subjected to a jury trial as required by Cunningham v. California (2007) 549 U.S. 270, Blakely v. Washington (2004) 542 U.S. 296, and Apprendi v. New Jersey (2000) 530 U.S. 466.  The arguments are unpersuasive as, for each defendant, the upper term was imposed based upon defendant's record of prior convictions, a factor outside the precept on which they rely.
>
> People v. Black (2007) 41 Cal.4th 799 concludes that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, *or is justified based upon the defendant's record of prior convictions.*"  (Id. at p. 816, italics added.)  Accordingly, "[t]he issue to be determined in each case is whether the trial court's factfinding increased the sentence that otherwise *could* have been imposed, not whether it raised the sentence above that which otherwise would have been imposed."  (Id. at p. 815, 62 Cal. Rptr.3d 569, 161 P.3d 1130.)
>
> Under rule 4.421(b)(2) of the California Rules of Court, circumstances in aggravation include that "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness."  The prior convictions and sustained petitions to which the trial court pointed meet this criterion.
>
> Defendant Alleyne argues that sustained juvenile petitions may not be considered as within his record of prior convictions for enhancement purposes.  We have rejected a closely parallel view in People v. Palmer (2006) 142 Cal.App.4th 724, 727 and reject defendant Alleyne's claim for the reasons given therein.  Because one legally sufficient aggravating

21

1  circumstance was justified based on the defendants' records of priors, the
2  trial court's finding of additional aggravating circumstances did not violate
   defendants' constitutional rights under Black.

3  (Opinion at 15-16.)

4       The United States Supreme Court has held as a matter of constitutional law that, other

5  than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the

6  prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

7  doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). In Blakely v. Washington, 542 U.S.

8  296, 303 (2004), the Supreme Court held that the "statutory maximum for Apprendi purposes is

9  the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury

10 verdict or admitted by the defendant."

11      In People v. Black, 35 Cal.4th 1238 (2005) ("Black I"), the California Supreme Court

12 held that California's statutory scheme providing for the imposition of an upper term sentence

13 did not violate the constitutional principles set forth in Apprendi and Blakely. The California

14 Supreme Court in Black I reasoned that the discretion afforded to a sentencing judge in choosing

15 a lower, middle or upper term rendered the upper term under California law the "statutory

16 maximum." Black I, 35 Cal.4th at 1257-61. However, in Cunningham v. California, 549 U.S.

17 270 (2007), the United States Supreme Court held that a California judge's imposition of an

18 upper term sentence based on facts found by the judge (other than the fact of a prior conviction)

19 violated the constitutional principles set forth in Apprendi and Blakely. The United States

20 Supreme Court thus expressly disapproved the holding and the reasoning of Black I, finding that

21 the middle term in California's determinate sentencing law was the relevant statutory maximum

22 for purposes of applying the principles announced in Blakely and Apprendi. Cunningham, 549

23 U.S. at 291-94.[5]

24 /////

25

26    [5] The Ninth Circuit subsequently held that the decision in Cunningham may be applied retroactively on collateral review. Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).

1    In light of its decision in <u>Cunningham</u>, the United States Supreme Court vacated

2 <u>Black I</u> and remanded that case to the California Supreme Court for further consideration.  <u>See</u>

3 <u>Black v. California</u>, 549 U.S. 1190 (2007).  On remand, the California Supreme Court held that:

> 4    so long as a defendant is eligible for the upper term by virtue of facts that
> have been established consistently with Sixth Amendment principles, the
> 5    federal Constitution permits the trial court to rely upon any number of
> aggravating circumstances in exercising its discretion to select the
> 6    appropriate term by balancing aggravating and mitigating circumstances,
> regardless of whether the facts underlying those circumstances have been
> 7    found to be true by a jury.

8 <u>People v. Black</u>, 41 Cal.4th 799, 813 (2007) ("<u>Black II</u>").  Thus, the California Supreme Court

9 has found that as long as one aggravating circumstance has been established in a constitutional

10 manner, a defendant's upper term sentence withstands Sixth Amendment challenge.  <u>People v.</u>

11 <u>Towne</u>, 44 Cal. 4th 63, 75 (2008); <u>Black II</u>, 41 Cal.4th 812-13; <u>see also</u> <u>People v. Osband</u>, 13

12 Cal. 4th 622, 728 (1996).  Thereafter, relying on the California Supreme Court's decision in

13 <u>Black II</u>, the Ninth Circuit Court of Appeals has recognized that under California law only one

14 aggravating factor is necessary to authorize an upper term sentence.  <u>Butler v. Curry</u>, 528 F.3d

15 624, 641-43 (9th Cir.), <u>cert.</u> denied ___ U.S.___, 129 S. Ct. 767 (2008).

16    Furthermore, with respect to claims of <u>Apprendi</u> error, "the relevant question is not

17 what the trial court would have done, but what it legally could have done."  <u>Butler</u>, 528 F.3d at

18 648.  Thus, federal courts have acknowledged that under California law, only one valid

19 aggravating factor need be found to authorize an upper term sentence.  <u>Butler</u>, 528 F.3d at 641;

20 <u>Kessee v. Mendoza-Powers</u>, 574 F.3d 675, 676 n.1 (9th Cir. 2009); <u>see also</u> <u>Moore v. Evans</u>, No.

21 2:09-cv-2737-JFM (HC), 2010 WL 4290080, at *9 (E.D. Cal. Oct. 22, 2010); <u>Armstrong v.</u>

22 <u>Small</u>, No. CV 07-1101 RGK (FMO), 2009 WL 863351, at *17 (C.D. Cal. Mar. 30, 2009).  That

23 the sentencing judge might not have imposed an upper term sentence in the absence of additional

24 aggravating factors does not implicate the Sixth Amendment.  <u>Butler</u>, 528 F.3d at 649.

25 Accordingly, in this case petitioner's upper term sentence is not unconstitutional if at least one of

26 the aggravating factors that the sentencing judge relied upon was established in a manner

1  consistent with the Sixth Amendment.

2         Moreover, even if none of the aggravating factors on which the court relies in

3  sentencing a defendant to an upper term sentence is established in a manner consistent with the

4  Sixth Amendment, the granting of federal habeas relief would be required only if the error was

5  not harmless.  Washington v. Recuenco, 548 U.S. 212, 221-22 (2006) (sentencing errors subject

6  to harmless error analysis); see also Butler, 528 F.3d at 648 (harmless error standard under

7  Brecht v. Abrahamson, 507 U.S. 619 (1993), will prevent the granting of relief unless the error

8  had a "substantial and injurious effect" on a defendant's sentence)).  Thus, to grant federal

9  habeas relief in a case involving a constitutional error in the imposition of an upper term sentence

10  under California law, the federal habeas court must have "grave doubt" as to whether a jury

11  would have found the relevant aggravating factor beyond a reasonable doubt.  Butler, 528 F.3d at

12  648.  "Grave doubt" exists "when, in the judge's mind, the matter is so evenly balanced that he

13  feels himself in virtual equipoise as to the harmlessness of the error."  Butler, 528 F.3d at 648

14  (quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995).  See also; Baker v. Kramer, No. 2:07-

15  cv-1170-JAM-JFM (HC), 2010 WL 3057757, at *23 (E.D. Cal. Aug. 3, 2010) ("[B]ecause the

16  trial judge could have legally imposed the upper term solely for the existence of petitioner's prior

17  adult convictions, petitioner's aggravated sentence . . . is not unconstitutional.")

18         Here, the trial judge imposed the upper term sentence based on petitioner's

19  "numerous sustained juvenile petitions" and because petitioner was "a parolee at large" when the

20  commitment offense occurred.  (RT at 799.)  With respect to use of juvenile adjudications as an

21  aggravating factor in imposing sentence such as occurred here, the Ninth Circuit has held that:

22         [T]he "prior conviction" exception to Apprendi's general rule must be
         limited to prior convictions that were themselves obtained through
23         proceedings that included the right to a jury trial and proof beyond a
         reasonable doubt.  Juvenile adjudications that do not afford the right to a
24         jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do
         not fall within Apprendi's "prior conviction" exception.

25

26  United States v. Tighe, 266 F.3d 1187, 1194 (9th Cir. 2001).

24

1        However, in applying the AEDPA standard of review, the rule adopted by the Ninth

2  Circuit in Tighe is not "clearly established federal law 'as determined by the Supreme Court of

3  the United States.'" Boyd v. Newland, 467 F.3d 1139, 1152 (9th Cir. 2006) (citing 28 U.S.C. §

4  2254(d)(1)). In Boyd, the Ninth Circuit recognized that the Third, Eighth, and Eleventh Circuits,

5  as well as California courts, have held that the Apprendi "prior conviction" exception includes

6  non-jury juvenile adjudications, which can be used to enhance a defendant's sentence. Id. (citing

7  United States v. Burge, 407 F.3d 1183 (11th Cir. 2005), United States v. Jones, 332 F.3d 688,

8  696 (3d Cir. 2003), and United States v. Smalley, 294 F.3d 1030, 1033 (8th Cir. 2002)). Thus,

9  the court in Boyd concluded,

> in the face of authority that is directly contrary to Tighe, and in the absence
> of explicit direction from the Supreme Court, we cannot hold that the
> California courts' use of Petitioner's juvenile adjudication as a sentencing
> enhancement was contrary to, or involved an unreasonable application of,
> Supreme Court precedent.

467 F.3d at 1152. Accordingly, the sentencing court's reliance on petitioner's numerous

sustained juvenile petitions as an aggravating circumstance justifying the imposition of the upper

term was appropriate under California law and fails to entitle petitioner to habeas relief under

clearly established federal law.

        Finally, in this case any error in sentencing petitioner to the upper term was harmless

because at the time of the commitment offense petitioner was on parole. Indeed, petitioner

testified at his trial that he was a "parolee" at the time of his arrest. (RT at 509.) In light of this

fact, the undersigned does not have "grave doubt" as to whether a jury would have found beyond

a reasonable doubt that petitioner's crime involved the aggravating factor cited by the trial judge

in imposing sentence, specifically that petitioner was on parole when the crime was committed.

See Cal. Rules of Court, Rule 4.421.

        For all of these reasons, the rejection of petitioner's arguments with respect to the

sentence imposed by the California Court of Appeal was neither contrary to, nor an unreasonable

application of clearly established federal law. Accordingly, petitioner is not entitled to federal

1    habeas relief on his claim of sentencing error.

2        E.  Cumulative Error

3            Petitioner argues that even if this court finds each of the alleged errors individually

4    harmless, that "collectively considered they 'fatally infected the trial' preventing a fair trial."

5    (Pet. at 28.)

6            The Ninth Circuit has concluded that under clearly established federal law, the

7    combined effect of multiple trial errors may give rise to a due process violation if they render a

8    trial fundamentally unfair, even where each error considered individually would not require

9    reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Donnelly v. DeChristoforo,

10   416 U.S. 637, 643 (1974) and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).  "The

11   fundamental question in determining whether the combined effect of trial errors violated a

12   defendant's due process rights is whether the errors rendered the criminal defense 'far less

13   persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or

14   influence' on the jury's verdict."  Parle, 505 F.3d at 927 (quoting Brecht v. Abrahamson, 507

15   U.S. 619, 637 (1993)).  See also Hein v. Sullivan, 601 F.3d 897, 917 (9th Cir. 2010) (same).

16           This court has addressed each of petitioner's claims above and has concluded that no

17   error of constitutional magnitude occurred in connection with his trial, sentencing and appeal

18   therefrom. The court also concludes that the alleged errors raised by petitioner in his petition

19   before this court, even when considered in combination, did not render his defense "far less

20   persuasive," nor did they have a "substantial and injurious effect or influence on the jury's

21   verdict."  Parle, 505 F.3d at 927.  Accordingly, petitioner is not entitled to federal habeas relief

22   with respect to his cumulative error claim.

23                                  CONCLUSION

24           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

25   writ of habeas corpus (Doc. No. 1) be denied.

26   /////

1        These findings and recommendations are submitted to the United States District

2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

3 one days after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6 shall be served and filed within seven days after service of the objections.  Failure to file

7 objections within the specified time may waive the right to appeal the District Court's order.

8 Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

9 1991).  In any objections he elects to file petitioner may address whether a certificate of

10 appealability should issue in the event he elects to file an appeal from the judgment in this case.

11 See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

12 certificate of appealability when it enters a final order adverse to the applicant).

13 DATED: November 22, 2010.

14

15

16 _____

DALE A. DROZD

UNITED STATES MAGISTRATE JUDGE

17 DAD:6
alleyne1903.hc

18

19

20

21

22

23

24

25

26